# THE CHEMICAL NATIONAL BANK OF CHICAGO

*v.*

## THE HARTFORD DEPOSIT COMPANY.

*Filed at Mt. Vernon June 14, 1895.*

1. RECEIVER—*of national bank cannot avoid the bank's prior contract.* A receiver of a national bank has no power to do any act which would impair the obligation of a contract entered into by such bank before his appointment.

2. BANKS—*appointment of receiver for national bank does not dissolve it.* The appointment of a receiver for a national bank does not forfeit the charter or work a dissolution of such bank, so as to prevent suit being brought against it on a lease made before the receiver was appointed.

3. SAME—*rents accruing on lease—subsisting claim before insolvency.* Rent accruing on a lease made to a national bank as tenant, an installment of which was due several days before a receiver was appointed for the bank, is a subsisting demand at the date of the suspension of business, and an action may be sustained against the bank on the lease after the appointment of the receiver.

4. SAME—*receiver not a necessary party in such case.* In an action on such a lease the receiver is not a necessary party, and it is not error to refuse to render judgment against him jointly with the bank.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

DUNCAN & GILBERT, for appellant:

A claim, to be entitled to be proven up and paid by dividends out of the assets of a national banking association in the hands of a receiver, must be one which, at the date of the suspension of the association, was an existing demand, and the claim for rent under this lease is not such a demand. *French* v. *Morse,* 2 Gray, 111; *Riggin* v. *Magwire,* 15 Wall. 549; *Savory* v. *Stocking,* 4 Cush. 607; *Deane* v. *Caldwell,* 127 Mass. 242; *White* v. *Knox,* 111 U. S. 784.

After the appointment, by the comptroller of the currency, of a receiver of a national banking association, no judgment can be rendered against such association or its receiver for any claim which, at the date of the bank's suspension, was not an existing demand. *Bank* v. *Bank*, 14 Wall. 383; *White* v. *Knox*, 111 U. S. 784.

The business of the bank must stop when insolvency is declared. U. S. Rev. Stat. sec. 5228.

BURNHAM & BALDWIN, for appellee:

The receiver could not impair the obligation of this contract. *Martin* v. *Black*, 9 Paige's Ch. 641; *In re Washburn*, 11 Nat. Bank. Reg. 66.

In rejecting a claim the receiver's action is by no means binding or final, and is, by statute and adjudication, made expressly subject to review by a court of competent jurisdiction. U. S. Rev. Stat. sec. 5236; *Bank* v. *Bank*, 14 Wall. 383 ; *White* v. *Knox*, 111 U. S. 787.

Does the appointment of a receiver in itself, in law or in fact, dissolve the corporation? Clearly it does not. Such is held to be the law and the fact in each of the following cases: *Bank* v. *Bank*, 36 Conn. 325 ; *Bank* v. *Bank*, 14 Wall. 388 ; *Bank* v. *Bank*, 2 Hun, 287; *Bank* v. *Bailey*, 12 Blatchf. 480; *Jones* v. *Bank*, 10 Col. 464; *Ordway* v. *Bank*, 47 Md. 217.

There is no provision in the National Banking act which releases an insolvent national bank from the general rule of law that an insolvent corporation remains liable under a lease entered into before insolvency. See sec. 1, chap. 156, of supplement to U. S. Rev. Stat.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court :

This was an action brought by the Hartford Deposit Company, against the Chemical National Bank of Chicago and Eli C. Tourtelot, as receiver of the bank, to recover damages for a failure to pay rent alleged to be due

under a written lease from August 1, 1893, to April 31, 1894. The facts were agreed upon, and they are substantially stated in the opinion of the Appellate Court, as follows:

"The Chemical National Bank of Chicago entered into a lease, dated November 18, 1892, with the Hartford Deposit Company, of a banking office of a certain building owned by the said Hartford Deposit Company. In accordance with its terms the bank paid $2500 on the delivery of said lease. The term was for a period of five years, from May 1, 1893, at an annual rental of $12,000, payable in equal monthly installments of $1000, in advance, exclusive of and in addition to said first payment of $2500. The bank entered into and took possession of said premises on May 1, 1893, the first day of said term, and the first installment of rent fell due and was payable on that day. This installment was not paid when due, nor had it, or any part of it, been paid when, on May 9, 1893, the bank became insolvent and a national bank examiner took possession of its assets and of said premises. On July 21 a receiver was duly appointed, and on July 27 he notified the Hartford Deposit Company of his election to terminate said lease after July 31, 1893, so far as he, as receiver, was concerned. On the same day, namely, July 27, said receiver paid to the Hartford Deposit Company the sum of $2709.68, which was, as agreed, the ratable amount of rent due for the period to July 31, inclusive. No other or further rent was paid under said lease by any other person or at any other time. The premises remained vacant until May 1, 1894, when they were re-let at a reduced rental."

It will be observed that nothing was done by the lessor to terminate the lease. The receiver gave notice of his election to terminate the lease on July 31, so far as he, as receiver, was concerned. This action, however, on his part, had no effect on the lease, as respects its validity or binding force between the lessor and the

Chemical National Bank. There was a contract, in writing, existing between these parties, which fixed their obligations and determined their rights and liabilities, and the receiver was clothed with no power to do any act which would impair the obligation of that contract. It may be conceded, as held in *Fidelity Safe Deposit and Trust Co.* v. *Armstrong*, 35 Fed. Rep. 567, that if the charter of the Chemical National Bank had been forfeited, and the corporation dissolved by decree of a court of competent jurisdiction, the lease might be regarded as terminated, for the reason that after the dissolution of the corporation no lessee existed. But such is not this case. No proceeding has been instituted to forfeit the charter of the Chemical National Bank, and no decree dissolving the corporation has ever been rendered.

It is, however, insisted, that the appointment of a receiver of a national banking association by the comptroller of the currency, on account of its insolvency, amounts, for all practical purposes, to a dissolution of such association. The comptroller of the currency has such supervisory power over national banks, and such only, as has been conferred by the acts of Congress, and in determining the effect to be given to his action in the appointment of a receiver it is necessary to go to the statute. If Congress intended that the mere act of appointing a receiver, on the part of the comptroller, should forfeit the charter of a national bank and work a dissolution of the corporation, surely that deliberate body would, in the enactment of the law, have used language indicating an intention of that character. The following sections of the acts of Congress have been cited in the brief as showing the authority of the comptroller to appoint receivers :

Section 1 of the act of Congress approved June 30, 1876, (Pratt's Digest, p. 120,) provides as follows : "That whenever any national banking association shall be dissolved, and its rights, privileges and franchises declared

forfeited, as prescribed in section 5239 of the Revised Statutes of the United States, or whenever any creditor of any national banking association shall have obtained a judgment against it in any court of record, and made application, accompanied by a certificate from the clerk of the court stating that such judgment has been rendered and has remained unpaid for the space of thirty days, or whenever the comptroller shall become satisfied of the insolvency of the national banking association, he may, after due examination of its affairs, in either case, appoint a receiver, who shall proceed to close up such association and enforce the personal liability of the shareholders, as provided in section 5234 of said statutes."

Section 5234 of the Revised Statutes of the United States (Pratt's Digest, p. 84,) provides as follows : "On becoming satisfied, as specified in sections 5226 and 5227, that any association has refused to pay. its circulating notes as therein mentioned, and is in default, the comptroller of the currency may forthwith appoint a receiver, and require of him such bond and security as he deems proper. Such receiver, under the direction of the comptroller, shall take possession of the books, records and assets, of every description, of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and on a like order may sell all the real and personal property of such association on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the treasurer of the United States, subject to the order of the comptroller."

There are certain other cases specified in sections 5141, 5151, 5191, 5195, 5201 and 5205 of the National Banking act under which a receiver may be appointed, but they have no special bearing on the question involved. We find

nothing, in any of the sections of the law wherein a receiver is authorized to be appointed, which in the slightest degree indicates that an appointment should be treated, for any purpose whatever, as a dissolution of the corporation. When a receiver has been appointed the statute makes it his duty to proceed to close up such association. This is done by collecting all debts and obligations due the bank, enforcing the personal liabilities of the stockholders, if necessary, and then paying off its liabilities. After a receiver has been appointed and entered upon the discharge of his duties, the corporation has no authority to transact any new business. It cannot issue bills, receive deposits, make loans or discount commercial paper; but after the receiver has collected the indebtedness due the bank and discharged its liabilities, the bank still exists as a corporation, and will continue to exist until dissolved by the judgment of a court or until its stockholders may voluntarily surrender its charter. Moreover, section 5239 points out the mode in which a charter of a national bank may be forfeited. That section is as follows: "If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents or servants of the association to violate, any of the provisions of this title, all the rights, privileges and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district or territorial court of the United States, in a suit brought for that purpose by the comptroller of the currency, in his own name, before the association shall be declared dissolved." If a judgment of a court is necessary to dissolve a corporation on the ground specified in the foregoing section, upon what principle can a judgment be dispensed with when some other ground of forfeiture is relied upon?

But disregarding other reasons, a sufficient answer to the position of counsel is, the Banking act nowhere pro-

vides that the appointment of a receiver shall work a dissolution of the charter of a banking association. It is not pretended that the appointment of a receiver for an ordinary corporation will operate as a dissolution of such a corporation, and in the absence of an act of Congress providing otherwise we perceive no reason why one rule should be applied to an insolvent national bank and a different rule applied to other insolvent corporations. In the absence of a statute or act of Congress all insolvent corporations should stand on the same footing.

But it is said, "a claim, to be entitled to be proven up and paid by dividends out of the assets of a national banking association in the hands of a receiver, must be one which, at the date of the suspension of the association, was an existing demand, and the claim for rent under this lease is not such a demand." The lease executed between the bank and appellee was a valid contract. The premises were leased for a term of five years, from May 1, 1893, at $12,000 per annum, payable in monthly installments of $1000, in advance. The bank went into the possession of the premises on the first day of May, 1893, and $1000 was due on the rent on that day. The money was not paid, and there was then a breach of the contract for which an action might have been maintained,—and this occurred nine days before insolvency. There is therefore no foundation for the position of counsel that the claim of appellee was not an existing demand at the time the bank suspended. The amount of damages may not have been as large on the first day of May, 1893, as at a later period, but on that date there was a breach of the contract and a right of action for such breach.

*Bank of Bethel* v. *Pahquioque Bank,* 14 Wall. 383, fully sustains the right of appellee to maintain the action. It is there, among other things, said: "Express power to sue and be sued, complain and defend, in any court of law and equity, is conferred on such associations by the eighth section of the act providing for their organiza-

tion, and it seems quite clear that the association is a proper party to be sued in all matters in which the corporation is interested, unless the association is disqualified for that purpose by virtue of the appointment of a receiver, by his subsequent action as such under his appointment. Neither power to sue nor to be sued in such cases is anywhere, in terms, conferred upon the receiver, nor upon the comptroller of the currency in any case except when he institutes a suit to forfeit the rights, privileges and franchises of the association, and in that case the provision is express that the suit shall be in his own name. Beyond doubt the appointment of a receiver supersedes the power of the directors to exercise the incidental powers necessary to carry on the business of banking, as the receiver is required to take possession of the books, records and assets, of every description, of the association, and from that moment the association is forbidden to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking; but the corporate franchise of the association is not dissolved, and the association, as a legal entity, continues to exist, as is shown to a demonstration by the fact that it is required safely to keep the money on hand belonging to it, and may deliver special deposits in its keeping to the rightful owners." See, also, *White* v. *Knox*, 111 U. S. 784.

It is claimed by appellant that the court erred in not rendering judgment against the receiver as well as the bank. The purpose of this action was to establish the demand of appellee, in a court of competent jurisdiction, against the bank. The receiver was not a necessary party to this action, and not being a necessary party it was not error to refuse judgment against him.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*