Hillsborough, ⎱
  June, 1899. ⎰

BANK COMMISSIONERS v. NEW HAMPSHIRE TRUST Co.

69  621
s70  538
70  541
70  542

Insolvency proceedings against a bank begin with the appointment of an assignee, and claims of creditors should be proved as of that date.

Such proceedings do not rescind contracts, but disable the bank from performing the executory part thereof; and a creditor may prove his claim for past or prospective damages arising from such non-performance.

Trustees to hold collaterals for the benefit of creditors, under a contract between them and the debtor, have no authority as such to prove, in insolvency proceedings, a claim for the excess of the amount due the creditors above the value of the collaterals.

Payments to creditors with the consent of the court, made after a bank has been enjoined from doing business and before the appointment of an assignee, do not necessarily affect the distribution of assets after such appointment.

CLAIMS, by the trustees under the defendants' contracts of February 1, 1886, and March 14, 1894, for (1) expenses incurred prior to March 3, 1898, in the execution of the trust, (2) expenses to be incurred after that date, and (3) the difference between the value of the securities pledged with the trustees and the amounts due debenture-holders secured by the pledge. Facts agreed.

By the contracts referred to, the defendants pledged with certain persons in trust real estate securities to secure the payment of certain obligations made and issued by the defendants, and agreed to pay the trustees the necessary expenses incurred in the execution of the trust. See *Smith* v. *N. H. Trust Co.*, 68 N. H. 424. Obligations issued under these contracts are outstanding to the amounts respectively of $12,100 and $3,567,000. The first contract provides that, if default shall be made in the payment of interest upon the obligations, and it shall continue for thirty days, or if default shall be made in the payment of principal " then due," the trustees shall at once collect or sell the securities pledged with them, and apply the proceeds to the payment of the obligations. The contract of 1894 provides that, if the defendants shall fail to make payment of interest or principal for five months after it becomes due, a default shall be deemed to have occurred; and in that event the trustees shall, " at the request of the holders of the majority in amount of the then outstanding obligations, proceed to collect the security in their hands, or to sell the same at public auction, as a majority in amount of said bondholders may direct, and shall apply the pro-

ceeds thereof towards the then outstanding obligations *pro rata*; or, if the holders of a majority of the then outstanding obligations shall so elect or direct, this trust shall be terminated, and they may assume the control and collection of the securities remaining in this trust, for the benefit of the holders of all outstanding obligations issued hereunder, through such agents, under such conditions, and in such manner, as they may determine; and it shall be the duty of the trustees to deliver, to such persons as the holders of a majority of the then outstanding obligations may direct, all securities and properties then remaining in their possession under this trust, together with all necessary assignments and conveyances, and said trustees shall thereupon. be discharged from this trust."

Upon the petition of the plaintiffs, filed November 11, 1895, an assignee of the property and effects of the defendants was appointed March 30, 1897, under the provisions of s. 15, c. 162, P. S. A commissioner, appointed to examine and allow claims against the estate, has found the amount due the trustees for expenses of administering the trusts prior to March 3, 1898, and has made as accurate estimates as practicable of the amount that will be required to pay the expenses after that date, and of the difference between the value of the pledged securities and the debts for the payment of which they were pledged.

July 22, 1893, upon petition of the plaintiffs, the defendants were enjoined from paying any money to their depositors and creditors, with certain exceptions not material to the present inquiry. The injunction continued in force until the assignee was appointed, but was modified from time to time so that the defendants were allowed to pay, and did pay, to their unsecured creditors, eleven per cent of their claims before March 30, 1897. The trustees say that their claims, as found and estimated by the commissioner, are proper claims against the defendants' estate, and are preferred, if not in full, to the extent of eleven per cent thereof.

*Isaac W. Smith, Elijah M. Topliff*, and *Alfred T. Batchelder*, for themselves as trustees.

*William H. Drury*, for the defendants' assignee.

CHASE, J. The provisions of *ss.* 15–25, *c.* 162, P. S., form a complete system of insolvency proceedings under which the property of insolvent banking institutions, trust companies, etc., may be placed in the custody of the law, to be converted into. money and divided among their creditors. *Brown* v. *Folsom*, 62 N. H. 527. The appointment of an assignee of the defendants' property, March 30, 1897, under these provisions, was the begin-

ning of the insolvency proceedings in this case. *Moseley* v. *Jenness*, 66 N. H. 573. Thereupon, " all the estate, property, rights, and credits " of the defendants became vested in the assignee, and the corporation was practically dissolved. P. S., *c.* 162, *s.* 16; *In re White Mountains Bank*, 46 N. H. 143; *Hall* v. *Brackett*, 60 N. H. 215, 216. In order that the proceeds of the property may be distributed among the creditors equitably (P. S., *c.* 162, *s.* 20), it is necessary that their claims shall all be allowed as of the same date. As in the case of other insolvency proceedings, this date should be the date of the beginning of the proceedings,— interest being allowed to that date upon claims bearing interest, and a rebate of interest being made upon such as were not then due and were not upon interest. P. S., *c.* 201, *s.* 13.

The insolvency proceedings did not revoke the defendants' contracts with the trustees, nor excuse the defendants from performing them. *Insurance Comm'r* v. *Insurance Co.*, 68 N. H. 510. At the beginning of the proceedings, the defendants had not paid certain expenses of the trustees which, by their contracts, they had agreed to pay. The nature and extent of the trustees' claim on this account under the contract of 1894 were considered and determined in *Smith* v. *N. H. Trust Co.*, 68 N. H. 424; and the trustees should be allowed whatever sum was due them March 30, 1897, according to that decision. The insolvency proceedings disabled the defendants from performing the executory portions of their agreements in respect to these expenses, and the trustees are entitled to an allowance of reasonable damages for the breaches of contract thus occasioned. All such expenses that were incurred before the proof of the claim constitute a portion of these damages. The balance must be found from the evidence showing the probable necessity for, and extent of, future expenses. Like other questions of fact, the decision of this question must depend upon the weight of the competent evidence submitted to the tribunal.

It does not appear that the trustees have authority to make a claim in behalf of the debenture-holders for an excess of the indebtedness due them above the value of the securities pledged to the trustees for their benefit. The agreement of March 30, 1894, provides that a failure of the Trust Company to pay interest or principal, for a period of five months after the same are due, shall be deemed to be a default by the company; and, in the event of a default, the trustees shall, at the request of the holders of a majority in amount of the outstanding obligations, " proceed to collect the securities in their hands, or to sell the same at public auction," as shall be directed by such holders, and shall apply the proceeds toward the payment of the obligations *pro rata;* or, if the holders so elect, the trustees shall de-

liver and assign the securities to them, and the trust shall terminate. The agreement of February 1, 1886, provides that, in case of a default, the trustees shall, after thirty days, proceed to collect or sell the securities in their possession and apply the proceeds to the payment of the debentures. So far as appears, no action has been taken under these provisions. Nearly all of the securities in the possession of the trustees are held under the contract of March 14, 1894; and this contract certainly gives no authority to the trustees to agree with the defendants' assignee for a purchase of the securities, and the application of the purchase price to the payment of the debentures. If the claim of the trustees for an allowance in behalf of the debenture-holders of an excess of indebtedness above the value of the collaterals were sustained, the effect would be to transfer the equitable title of the collaterals to the debenture-holders for the price at which they were valued in adjusting the claim, and to satisfy the indebtedness to that extent. The contract of 1894 confers no independent authority upon the trustees to make such a purchase, and it does not appear that they have acquired the authority in any way. This portion of their claim should be disallowed.

The contracts give the trustees no preference in respect to their expenses except as against stockholders of the Trust Company, and except, also, so far as the payment of them is secured by the pledge of the collaterals. *Smith* v. *N. H. Trust Co.*, 68 N. H. 424. The statutes give no preference in such a case except the expenses of the assignment. P. S., c. 162, s. 20. The payment to unsecured creditors of eleven per cent of their debts was made prior to the beginning of the insolvency proceedings. It is not perceived how this fact in law entitles the trustees to a preference upon their claims. It does not appear but that payments of equal or greater relative amounts were made to them during the period before the insolvency proceedings were begun, while the Trust Company was under injunction. The trustees' claims to preference should also be disallowed.

*Case discharged.*

BLODGETT, C. J., and PEASLEE, J., did not sit : the others concurred.