Argued February 26, affirmed March 23, rehearing denied April 27, 1920.

## ELMIRA LUMBER CO. *v.* OWEN.

### (188 Pac. 415.)

**Bills and Notes—Release from Liability for Breach of Contract Good Consideration, Despite Impossibility of Performing Contract.**

1. Where sellers of timber agreed to obtain the purchaser a right of way for a logging road over the land of another, to commence negotiations therefor at once, and use their best efforts to acquire such right at a reasonable price by grant or agreement, and if unable to do that within a reasonable time to organize a corporation and institute an action to acquire such easements by the right of eminent domain, the sellers cannot maintain that there was not a good consideration for a note given to relieve them of their liability under the contract on the ground that the contract was impossible of performance, in the absence of a showing that they used their best efforts to procure such right of way, by agreement or grant or otherwise, or that they organized a corporation or instituted an action to acquire it through eminent domain.

**Contracts—Mere Impossibility of Execution by Promisor no Excuse for Failure to Perform.**

2. To excuse performance of a valid and lawful contract made upon a sufficient consideration, it must appear obviously impossible of performance in the nature of things by anyone; mere impossibility of execution by the promisor not being enough.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

This action is founded upon a joint and several promissory note for the sum of $574, payable six months after date, with interest at 6 per cent per annum, executed by defendants to the plaintiff on April 4, 1916, of which it is alleged that the plaintiff is the owner and holder, and that no part thereof has been paid.

For answer defendants admit that the plaintiff is a corporation, the execution of the note as alleged, and that plaintiff is the owner and holder thereof, but deny that any part of it is due or owing. As an affirmative defense defendants plead a contract, executed on July 31, 1915, between the First National Bank of Eugene, Oregon, party of the first part; Sarah E. Owen and B. J. Owen, her husband (defendants herein), parties of the second part; Joseph Aubel and Robert Reeves, parties of the third part; and the Elmira Lumber Company, a corporation of Oregon (plaintiff herein), party of the fourth part. It was therein recited that the party of the first part agreed to sell and the party of the fourth part agreed to purchase upon the terms therein stated, "all of the green growing merchantable fir and cedar saw timber fourteen (14) inches or over in diameter at the base, measured four (4) feet from the ground, suitable for manufacture into logs" upon a certain tract of land of 187.81 acres in section 2, township 18 S., R. 7 W., W. M., in Lane County, Oregon. By the terms of the contract the plaintiff had five years from date thereof in which to cut, log and remove the timber, with a privilege of erecting a sawmill on the premises. The agreed purchase price was $1.50 per thousand feet, log measure. The contract provided that:

"It is further understood and agreed between the respective parties hereto that it is absolutely necessary to the performance of this agreement by the party of the fourth part that said party shall have a right of way to build, maintain and operate a logging road, skid road, railroad or flumeway, as it shall elect, over and across the east half of the southwest quarter of section 2, township 18, south, range 7 west of the Willamette Meridian," and that the route should be selected by the plaintiff.

The parties of the second part, Sarah E. and B. J. Owen, did—

"Covenant and agree to obtain and furnish for the use of the fourth party within a reasonable time as hereinafter more particularly specified, a right of way for such logging road, skid road, railroad or flumeway as the fourth party may elect," and without charge or cost to them except that it should pay "the reasonable value for all merchantable timber cut or used in building or maintaining such road or flume."

The Owens agreed to negotiate for the right of way at once, "and use their best efforts to acquire the same by agreement and grant at a reasonable price," and in the event that they were thereby unable to procure such easement they were then to organize a corporation and obtain it through the right of eminent domain for the use and benefit of the plaintiff during the life of the contract. It was further provided that—

Should they "fail within a reasonable time to acquire said rights and easements either by grant or by the exercise of the right of eminent domain, as aforesaid, and furnish the same to the fourth party, then the fourth party shall be entitled at its election to organize such corporation and acquire or attempt to acquire said rights and easements at the proper charge and expense of the second parties."

96 Or.—9

In the event of a delay of more than six months in acquiring such rights and easements, provision was then made for extending the period of the contract and payments thereunder, and further that:

"In the event of the failure of the second party to acquire such rights and easements and furnish the same to the fourth party within a reasonable time, the fourth party shall have the right to cancel and terminate this contract."

The contract recites that—

The party of the first part, the First National Bank of Eugene, "Is acting in a representative capacity only, and that none of the covenants and agreements herein shall be personally binding upon the first party, but that any covenant and agreement of the first party herein made shall be deemed to be the personal covenant and obligation of the second parties."

Defendants further allege that—

The contract was illegal and void; that plaintiff had no right or claim against the defendants; and that plaintiff, "by making false and fraudulent claims under said contract, coerced these defendants into the execution of the said note, based upon the pretended consideration of the release of said contract, when as a matter of fact the said contract was illegal and void."

As a second affirmative defense it is alleged that the note was executed under certain threats, founded upon false and illegal claims as to the rights of the plaintiff under the contract, which were made to defendant. Hyland and the plaintiff knew to be null and void.

After filing its reply the plaintiff obtained leave of court to withdraw that pleading, and then filed the following demurrer:

"Comes now the plaintiff and demurs to each and all of the further and separate answers and defenses set up in the amended answer of defendants for the reason that none thereof state facts sufficient to constitute a defense."

After argument the court sustained the demurrer and the defendants refused to plead further.

It was stipulated that $50 was reasonable attorneys' fees, and the court entered judgment against the defendants as prayed for in the complaint, from which they appealed.    AFFIRMED.

For appellants there was a brief over the names of *Mr. C. M. Kissinger* and *Mr. O. H. Foster,* with an oral argument by *Mr. Kissinger.*

For respondent there was a brief over the name of *Messrs. Smith & Bryson,* with an oral argument by *Mr. E. R. Bryson.*

JOHNS, J.—The contract was made between the four different parties therein on July 31, 1915. The note was executed on April 4, 1916, and defendant Hyland was not a party to the contract. While the agreement says that the First National Bank of Eugene contracted to sell to the plaintiff the standing and growing timber upon the 187-acre tract of land, it further appears that the bank was acting "in a representative capacity only," and that it was not personally bound, "but that any covenant and agreement of the first party herein made (which was the bank) shall be deemed to be the personal covenant and obligation of the second parties," Sarah E. and B. J. Owen, defendants herein.

In other words, it was those defendants who contracted with the plaintiff to sell the timber upon the

tract of land in question, to furnish it "the right to go over and across said lands or any part thereof * * for the purpose of cutting, logging and removing said timber," and "to erect and maintain suitable logging camps upon said premises," to use "other than merchantable saw timber upon said premises for fuel purposes without charge," and to construct a sawmill thereon "and to use the necessary space thereabout for millyards." The purchase price was "one dollar and fifty cents ($1.50) per thousand feet, log measure." While the amount or value of the timber does not appear from the contract, it does provide that when the right of way is acquired and becomes available for the plaintiff that it shall then execute to the bank its certain promissory notes aggregating $2,000.

As a further consideration for the contract the defendants B. J. and Sarah E. Owen did covenant and agree, at their own expense and within a reasonable time and for the use and benefit of the plaintiff, that they would procure a right of way for a logging road, railroad or flume over and across the east half of the southwest quarter of section 2, township 18 S., R. 7 W., W. M.; that they would commence negotiations therefor at once, and use their best efforts to acquire such rights at a reasonable price by grant or agreement; and that, should they not be able to do so within a reasonable time, they would organize a corporation and institute an action to acquire such easements by the right of eminent domain.

While it is not specifically alleged, it does appear from the defendants' first further and separate answer that the true consideration of the note sued upon was a release to the defendants from all of

their liability arising from and growing out of the contract.

The defendants claim that in the circumstances they could not acquire such rights by eminent domain or other legal proceedings; that the contract was impossible of performance, and that such facts were known to the plaintiff at the time it took and executed the promissory note, and for such reason it was null and void and without consideration.

1. Assuming all the facts to be true as alleged, they would not constitute a defense. There is no allegation in the answer that the defendants, within a reasonable time or ever, used their best or any efforts to procure such right of way by agreement or grant or otherwise, or that they organized a corporation and instituted an action to acquire it through eminent domain. In fact, there is no allegation that such defendants made any effort whatever to acquire such easements.

Their sole defense is the impossibility of performance. For aught that appears in the answer defendants could have acquired such rights through friendly negotiations with the owners of the land, or even through the right of eminent domain. Under the facts alleged, the breach of the contract was a sufficient consideration for the note.

2. The law of the instant case is settled by the decision of this court in *Reid* v. *Alaska Packing Co.,* 43 Or. 429 (73 Pac. 337), in which the *syllabus* lays down the rule that:

"To excuse performance of a valid and lawful contract, made upon a sufficient consideration, it must appear obviously impossible of performance in the nature of things by anyone; mere impossibility of execution by the promisor is not enough."

In the opinion it is said at page 436 of 43 Or., at page 339 of 73 Pac.:

"The rule to be deduced from the authorities is that, if one enters into a valid contract, for a sufficient consideration, to do a lawful thing, ·possible in itself * * —that is, in the nature of things—to be done, he must either carry out the contract according to its terms or answer in damages for a failure to do so. The mere impossibility of performance in fact will not be enough, but the contract must be obviously impossible upon its face before such a defense can be made."

Upon any theory of the case the demurrer should have been sustained. The judgment is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.

