THEODORE BARTHEN and MEYER & BROWN, INC., a creditor, complainants-appellants,

*v.*

LODI CORPORATIONS and JAMES A. VAN VALEN, receiver, defendants-respondents,

[Argued July 3d, 1922.  Decided November 20th, 1922.]

1. A decree of insolvency against a corporation and the appointment of a statutory receiver with power to continue the business does not work a rescission of its contracts. It does not, *ipso facto*, constitute an anticipatory breach of its contracts. The corporation continues to exist until its dissolution is effected either by surrender or judicial decision.

2. There is no fixed and inflexible rule by which to ascertain the time when a breach of an executory contract occurs for the sale of goods by a corporation, which has been adjudged insolvent, and a statutory receiver appointed with power to continue the business. Each case must be determined largely upon the facts presented, depending upon the attitude of the receiver.

3. The evidence in this case justifies the application of the rule, that the measure of damages for the breach of an executory contract for the sale of goods, by an insolvent corporation in the hands of a receiver, is the difference between the contract and market price of the goods, at the time and place of delivery, as fixed by the contract. 4 Comp. Stat. p. 4662 ¶ 64 (2) (3).

On appeal, &c.

Messrs. Meyer & Brown, Inc., Messrs. Stein, Stein & Hannoch, for the appellants.

Messrs. Morrison, Lloyd & Morrisson, for the respondents.

The opinion of the court was delivered by

BLACK, J.

The precise and only question involved on this appeal is to ascertain the amount of damages for the breach of an executory contract by a corporation, after it has been found insolvent and a statutory receiver has been appointed. The appellant contends there is no fixed and inflexible rule to be applied by which to ascertain the time of the breach of such contract, but each case must be decided upon its own facts, as to whether the receiver wishes to accept the benefits of the contract or to cancel it, and so acts. No case has been cited, and our own research has revealed no case in our courts deciding the precise point under discussion.

The court of chancery allowed damages as of October 4th, 1920, the date on which the receiver was appointed, amounting to $5,040, adding thereto the amount of damages fixed by the receiver, occurring prior to his appointment, amounting to $1,568, a total of $6,608. The appellant now claims that an additional allowance of $1,120 should be made, mak-

ing a total damage of $7,728. The result thus reached is ascertained by applying the well-established rule, that the measure of damages for the breach of a contract for the sale of goods, such as is involved in this case, is the difference between the contract and market price of the goods (rubber) at the time and place of delivery as fixed by the contract. This equals $7,728 and not $6,608. The learned vice-chancellor who advised a decree in the case based his conclusions upon the facts—first, the appointment of a receiver and notice of such appointment to the creditor. This may be conceded; second, the creditor had been informed by the receiver that he did not intend to carry out the contract beyond the amount allowed on the claim. This latter finding of fact, it is contended, on this appeal is not warranted by the evidence in the record. Our reading of the record justifies this contention. Some of the essential facts are:

The receiver was appointed by the court of chancery on the return day of the rule, October 4th, 1920. The corporation was not restrained from exercising its franchises. The receiver was authorized and empowered to conduct and to continue the business and fulfill the contracts for two weeks from that date. On October 18th, 1920, the receiver was made permanent. On the same day the receiver was authorized, empowered and directed to continue the operation of the plant until November 1st, 1920, and so on, by the further order of the court until November 29th, on which date the receiver was authorized to sell the assets pursuant to a plan of reorganization. The assets were then sold and delivered to the purchaser.

The contract between the parties out of which this controversy arose was dated about June 4th, 1919. It provided for the delivery by the appellant of sixty tons of rubber, in equal monthly quantities of five tons each, through the year 1920, at thirty-two cents per pound; "each month's arrival and on delivery of five tons to stand as a separate contract."

On September 24th, 1920, the company neglected and refused to accept the September delivery; the appellant

resold the rubber for eighteen cents. It was this difference for which the receiver allowed $1,568.

During the receiver's possession and operation correspondence ensued between the parties, which is a part of the stipulation of facts to be used on the appeal; but we are unable to find in the correspondence or in the record any express statement by the receiver to the effect, that he. did not consider himself obligated by the contract, or that he released the appellant from its obligation to deliver. This left the appellant in the position of compelling it to hold itself in readiness to perform, should it be requested so to do, by the receiver. As late as November 26th, 1920, the receiver, through his attorney, refused to take a delivery of the November installment and in a letter said, "I will write you later as to the December installment." So, we think the correspondence between the parties does not justify the finding of fact by the learned vice-chancellor.

From this statement of facts, the measure of damages is to be ascertained by the application of the well-established rule, which is the difference between the contract and market price of the goods at the time and place of delivery, as fixed by the contract. This amount is $7,728. This leads to a reversal of the decree.

The result flows from a consideration and application of the following settled legal principles: Upon the appointment of a receiver· he takes the property of the corporation, including its franchises, in the same condition and subject to all the duties, obligations and liabilities that rested upon the corporation itself. *New Jersey Southern Railroad Co.* v. *Railroad Commissioners, 41 N. J. Law 235, 249.* He holds the title to the property for the common benefit of all interested therein.

Placing the property of a corporation in charge of a receiver does not, *ipso facto,* work its dissolution, nor does it extinguish its corporate life. The appointment of a receiver is a mere mode of procedure for the administration of justice. *Ibid.* The corporation continues to exist until its dis-

solution is effected, either by surrender or judicial decision. *Kirkpatrick* v. *State Board of Assessors, 57 N. J. Law 53; Rosenbaum* v. *United States Credit System Co., 61 N. J. Law 543; Spader* v. *Mural Decoration, &c., Co., 47 N. J. Eq. 18.*

A decree of insolvency against a corporation does not work a rescission or termination of its contracts. *Bolles* v. *Crescent Drug, &c., Co., 53 N. J. Eq. 614.*

It does not, *ipso facto,* constitute an anticipatory breach of its contracts.

The measure of damages, the statute provides for, the Sales act (*4 Comp. Stat. p. 4662 § 64; P. L. 1907 p. 311*). (2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract. (3) When there is an available market for the goods in question the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept. See *King* v. *Ruckman, 24 N. J. Eq. 298; affirmed, 24 N. J. Eq. 556; 24 R. C. L. 116 ¶ 386.* The decree of the court of chancery is reversed, to the end that the record may be remitted to that court with instructions to enter a decree in accordance with the foregoing opinion. .

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, GARDNER, ACKERSON, VAN BUSKIRK—11.