CITY OF MONTPELIER *v.* NATIONAL SURETY CO.

November Term, 1922.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 3, 1923.

*Principal and Surety—Construction of Contract of Compensated Surety—Street Railroads—Appointment of Receiver Does Not Impair Franchise Obligations—Contracts—Impossibility of Performance—Effect of Appointment of Receiver on the Surety for Performance of Franchise Obligations—Effect on Compensated Surety of Beneficial Departure from Contract—Notice—Election of Remedies—Doctrine Inapplicable Where Remedies Not Inconsistent but Cumulative—Constitutional Law—Recovery on Surety's Bond Not A Taking of Property Without Due Process—Surety's Liability for Interest.*

1. The rule of *strictissimi juris*, applicable to the contract of a voluntary surety, does not apply to the contract of a company organized for the purpose of acting as a surety for compensation, but in the latter case the contract is regarded more in the nature of an insurance contract, and will be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable ground to expect.

2. The foregoing rule being one of construction only, liability of the compensated surety on its bond cannot be extended thereby beyond the terms of the contract, and where the meaning of such a bond is clear and unambiguous, it should be enforced, like other contracts, according to the manifest intention of the parties.

3. The receiver of a corporation can do nothing to impair the obligation of the company's franchise agreement, which was a valid subsisting contract when he was appointed.

4. Impossibility of performance, to excuse one called upon by a contract to perform, must consist in the nature of the thing to be done and not in the ability of the party to do it, so when a party contracts to do a thing without qualification he is not discharged from his liability under the contract because of a

contingency subsequently. arising making it impossible to do as he has agreed, as the promissor takes the risk within the limits of his undertaking of being able to perform.

5.  As the appointment of a receiver for a street railway company did not relieve it from the obligation of its franchise to pave certain portions of the streets through which its tracks passed, on the ground of impossibility, when such obligation was not performed the liability of the compensated surety on such company's bond, conditioned for the faithful performance by the company of such obligation, was not affected by such appointment, insolvency of the company, to which the appointment of a receiver was incidental, being a contingency necessarily contemplated by the parties to the bond.

6.  Where a street railway company was required by its franchise to pave certain portions of the streets through which its tracks ran with the same kind of material as the rest of the street, which provision was subject to change by agreement between the city counsel and the company, the surety on the company's bond for the faithful performance of such obligations was not relieved from liability on account of the company's default, by reason of a different and cheaper material having been used, at the request of the company's receiver, than was used on the remainder of the street, as a compensated surety is relieved from its obligations for a departure from the contract only when the departure is shown to be material and prejudicial.

7.  Where the franchise agreement of a street railway company required it to pave certain portions of the streets through which its tracks ran, and upon failure so to do after reasonable notice the city had the right to do the paving and charge the cost thereof to the company, the compensated surety on the company's bond for the faithful performance of such obligation was not relieved of liability thereunder on account of the company not receiving such a notice mailed by the city, where the failure of the company to carry out the contract was in no way dependent upon lack of notice.

8.  In such circumstances, the fact that the city had filed its claim against the street railway company in the receivership cause pending in chancery did not bar it from proceeding against the surety, for it had two remedies, one against the traction company for breach of contract and another against the surety

for the penalty of the bond, which in contemplation of law were not for the same claim, and both could be pursued at the same time and the surety not be harmed thereby, as the city could have but one satisfaction for its damages and any recovery would necessarily inure to the surety's benefit.

9. Where two remedies are not inconsistent but merely cumulative, the doctrine of election of remedies does not apply.

10. The obligation of a compensated surety on the bond of a street railway company, conditioned for the performance by the latter of its franchise agreements, being primary and direct, on default by such traction company recovery on the bond does not amount to confiscation of the surety's property and denial of due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

11. Instructions to the jury as to a surety's liability for interest in an action on the bond of a street railway company, *held* to be correct.

12. In an action against the surety on a bond, the time when interest begins to run upon the damages ascertained against the surety is fixed by the time when the obligee is by right entitled to interest upon the damages against the principal.

ACTION OF CONTRACT against the surety on a bond. Answer, denying liability and setting up special defenses. Trial by jury at the March Term, 1922, Washington County, *Butler,* J., presiding. Verdict for the plaintiff, motion to set aside the verdict overruled, and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Edward H. Deavitt* for the defendant.

*George L. Hunt* for the plaintiff.

TAYLOR, J. This is an action on a bond to the plaintiff executed by Barre & Montpelier Traction & Power Co. as principal and the defendant as surety, in the penal sum of $10,000, to secure compliance by the Traction Company with the provisions of the franchise under which it was permitted to operate a street railway in the City of Montpelier. The trial was by jury with verdict and judgment for the plaintiff. The defendant argues exceptions to the refusal of a directed verdict, to the refusal to

set aside the verdict of the jury, to the admission and exclusion of evidence and exceptions relating to the charge.

The condition of the bond was such that if the Traction Company should well and faithfully perform all and singular the duties and obligations imposed upon it under its franchise, the obligation was to be null and void; otherwise, to remain in full force and effect. The franchise gave permission to the Traction Company, "its successors and assigns," to construct and for a term of years to operate an electric street railway in certain streets, including Main and State Streets, the locus of the matters here in controversy. It was stipulated as a condition of the granting of the franchise that the Traction Company and its successors and assigns should at all times protect the plaintiff by a $10,000 bond with surety satisfactory to the city council, conditioned upon the faithful performance of the duties and obligations thereunder. Section 1 of the franchise specifies the terms and regulations under which the railway should be maintained and operated. Subsection (5) requires the Traction Company to restore any highway, sidewalks or cross walks that it may disturb in repairing or maintaining its roadbed or equipment; and subsection (7) relates to the removal of snow and ice from its tracks. Subsection (6) provides a track area including the portions of the highways between the rails, and for a distance of two feet on each side thereof, which the Traction Company is required to keep at a specified grade and in as good condition for travel as the adjacent street, "with the same kind of material as that used on that part of the highway where said rails are laid." Subsection (8) provides: "If the company fails to meet the requirements of sections (5), (6), and (7), the city may, after reasonable notice to the company, do the work necessary to meet such requirements and charge the reasonable cost thereof to the company," etc. Subsection (9) provides: "If at any time the city paves or regrades any highway occupied by the company's tracks, the company shall at the same time pave or regrade, with the same kind of material the portion of said highway between its rails and for a distance of 2 feet outside thereof, as provided in section (6) hereof. If the company fails to meet the requirements of this section, the city may do the work necessary therefor and from time to time, during the progress of said work, charge the reasonable cost thereof to the company, which shall be paid by the company upon the certification thereof by

the city treasurer; and the company shall be given reasonable opportunity to verify said cost.'' Another section of the franchise provides that its terms and regulations are subject to change by agreement between the city council and the Traction Company.

In the summer of 1920 the plaintiff paved a section of State Street west from the Rialto bridge, so-called, adjacent to the tracks of the Traction Company with cement. No notice thereof was given to the company. In December, 1920, on the petition of a creditor, the court of chancery appointed a receiver of all the assets of the Traction Company including its franchises; and, among other things, ordered the receiver to continue the operation and management of the railroad and take all necessary steps to that end with full power to receive all the income thereof and pay the operating expenses and make the necessary contracts and expenditures for repairs of the road, ''such as shall be necessary for the operation of said road,'' until further order of the court. The parties to the suit were enjoined from interfering in any manner with the property of the Traction Company and the management thereof by the receiver. The plaintiff was not a party to that proceeding until it appeared therein specially and filed a statement of its position. In 1921, and while the Traction Company was still in the hands of the receiver, the plaintiff undertook the work of laying a permanent pavement on Main Street and on State Street in addition to the work done in the summer of 1920. On Main Street and on State Street east of the Rialto bridge the construction was of granite paving blocks on a cement foundation. On State Street west of the Rialto bridge the construction was of reenforced cement. The authorization of this work was adopted by the city council in three sections. The work on Main Street was authorized in May, 1921. Notice of the action taken and that the city council required the performance of the duties and obligations imposed upon the Traction Company by subsections (6) and (9) of paragraph 1 of the company's franchise was given to both the receiver and the Traction Company. No claim seems to be made but that the company received this notice. Later the city council voted to lay granite block paving on State Street from Main Street to the Rialto bridge and instructed the clerk to notify the Traction Company thereof and that the company was expected to make arrangements to do its part in accordance with its franchise.

The clerk mailed to the Traction Company a notice to this effect indorsed as requiring the attention of the receiver. Still later the city council instructed the clerk to notify both the receiver and the Traction Company that the city proposed to lay pavement on State Street between Rialto bridge and Western Avenue and expected them to get their tracks in readiness without delay; and that it was the sense of the council that they would not call upon the Traction Company to pave its section with reenforced concrete, but that bituminous macadam or its equivalent would be acceptable. Copies of such notice were mailed to the receiver and to the Traction Company. It is claimed that all the notices, other than the first, addressed to the Traction Company were received by the receiver and were not turned over by him to any official of the company. Neither the receiver nor the Traction Company did the work of paving the track area required by the notices, but the work was done by the city. The evidence tended to show that the employees of the Traction Company, who had continued in their employment following the appointment of the receiver, and the receiver himself, cooperated during the progress of the work by way of removing, replacing, and aligning the railway track, and installing additional guide rails where granite blocks were laid. The track area on Main Street and east of the Rialto bridge on State Street was paved with granite blocks—the same construction as that used on the adjacent highway. The track area on State Street west of the Rialto bridge was paved with asphaltic concrete, an equivalent of bituminous macadam. This construction was less expensive than the reenforced concrete used on the adjacent highway, and was agreed upon by the receiver and the city council.

The cost to the city for doing the work required of the Traction Company in each section was certified as required by the franchise, the items aggregating $9,348.25. The plaintiff has never been paid anything on account of this work. Before bringing this suit the plaintiff demanded payment of the defendant on the ground that failure to do the work or pay the cost thereof was a breach of the condition of the bond.

The defendant's claims stated in oral argument were (1) that the defendant was not surety for the receiver; (2) that the use of different material west of the Rialto bridge was not within the terms of the contract—was such a change as would release the defendant from liability; (3) that proper notices were not

given.    The defendant's main contention is that it was surety for the Traction Company only which could not be charged with a breach of the franchise agreement, and so there was no breach of the bond, since the Traction Company was in the hands of a receiver during the time the paving work was going on, and besides was strictly enjoined from interfering with the property or its management.    Most of the exceptions argued are directed to some phase of this question.    It is argued that the defendant's obligation under the bond is limited to securing the performance of the terms of the franchise by the Traction Company; that the receiver was not an assignee of the company, nor its successor, in contemplation of certain sections of the franchise referred to, and so there has been no valid assignment of the franchise; that the receivership was involuntary, so far as the Traction Company was concerned; that the receiver was not the Traction Company, but an officer of the court in whose custody the property of the company was when the paving was done; that the receiver had only such authority as was conferred upon him by the court; and that the order appointing the receiver and enjoining the Traction Company from operating suspended the operation of the bond until such time as the company should again be operating the road under the franchise.

[1, 2]    A proper understanding of the principles governing such a suretyship obligation as this will facilitate the consideration of the questions presented.    The defendant's argument proceeds upon the theory that the rule of *strictissimi juris* applies. It is well settled, however, that while the contract of an individual surety, or a voluntary surety as spoken of in some cases, will be strictly construed and all doubts and technicalities resolved in his favor, the rule does not apply in case of a company organized for the purpose of acting as a surety for compensation.    The courts agree with practical unanimity that in the case of a surety company, acting for compensation, the contract will be construed most strongly against the surety, and in favor of the indemnity which the obligee has reasonable ground to expect. The contract is regarded more in the nature of an insurance contract, and by analogy the rules governing liability applicable in that class of contracts are applied.    Note 12 A. L. R. 382, where the cases are collected.    But the rule is one of construction only.    The bond of a compensated surety is not to be so construed as to extend liability beyond the terms of the contract.

*Burdett* v. *Walsh*, 235 Mass. 153, 126 N. E. 374. The plain intention of the parties cannot be nullified by construction. Where the meaning of such a bond is clear and unambiguous, it should be enforced, like other contracts, according to the manifest intention of the parties. *State* v. *Blanchard Constr. Co.*, 91 Kan. 74, 136 Pac. 905, Ann. Cas. 1915C, 192; *State* v. *National Surety Co.*, 126 Md. 290, 94 Atl. 916. The effect of the rule is to give such contracts of indemnity a reasonable construction, so as to give effect to the intention of the parties and to carry out, rather than defeat, the purpose for which they were executed. *Union Central Life Ins. Co.* v. *U. S. Fid. & Guar. Co.*, 99 Md. 423, 58 Atl. 437, 105 A. S. R. 313. It is said in the case last cited: "They should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms." For further discussion see Stearn's on Sur. (3rd ed.), 401-416; 21 R. C. L. 1160-1164; note 12 A. L. R. 382.

[3] The defendant misconceives the true relation of the parties. If it be assumed that the Traction Company and the receiver are independent parties, or that the latter is not to be regarded as the representative of the former, still the defendant may be liable. The franchise agreement was a valid subsisting contract at the time the receiver was appointed. While he may not have been bound by the contracts of the company without election, he could do nothing to impair the obligation of such contract. *Wolf* v. *National Bank*, 178 Ill. 85, 52 N. E. 896; *Chemical Nat. Bk.* v. *Hartford Deposit Co.*, 156 Ill. 522, 41 N. E. 225; Id., 161 U. S. 1, 16 Sup. Ct. 439, 40 L. ed. 595; High on Rec. (3rd ed.), § 273d, 318; *Arlington Heights Realty Co.* v. *Citizens' Ry., etc.* (Tex. Civ. App.) 160 S. W. 1109; see *Bank Com'rs.* v. *N. H. Tr. Co.*, 69 N. H. 621, 44 Atl. 130. As surety on the bond, the defendant, in effect, covenanted that the Traction Company would perform the obligations of its contract. It follows that the defendant is liable unless the receivership afforded the company an excuse for the nonperformance thereof.

[4] It is a general rule that what a party is bound by contract to perform, he must perform or pay damage for failure to do so. In substance, the defendant claims that the receivership proceedings made it impossible for the Traction Company to perform its contract, and seeks to bring the case within a recog-

nized exception to this rule. But it must be held that the appointment of a receiver did not relieve the company from its obligation under the franchise. It is not claimed that performance was prevented by operation of law. Neither was it excused for impossibility. To warrant the application of that principle, the impossibility must consist in the nature of the thing to be done and not in the inability of the party to do it. The general doctrine is well settled that, when a party contracts to do a thing without qualification, he is not discharged from his liability under the contract because of a contingency subsequently arising making it impossible for him to do that which he has agreed to do. The principle deducible from the cases is that if what is agreed to be done is in nature possible and lawful, it must be done; or, otherwise stated, the promissor takes the risk within the limits of his undertaking of being able to perform. Among the many cases where the principle is applied are *Jacksonville, etc., Co.* v. *Hooper,* 160 U. S. 514, 40 L. ed. 515, 16 Sup. Ct. 379; *Carnegie Steel Co.* v. *United States,* 240 U. S. 164, 60 L. ed. 576, 36 Sup. Ct. 342; *Day* v. *United States,* 245 U. S. 159, 62 L. ed. 219, 38 Sup. Ct. 57; *Phelps* v. *School Dist.,* 302 Ill. 193, 134 N. E. 312, 21 A. L. R. 737; *N. J. Magnam Co* v. *Fuller,* 222 Mass. 530, 111 N. E. 399; *Klauber* v. *San Diego St. Car Co.,* 95 Cal. 353, 30 Pac. 555; *Greil Bros. Co.* v. *Mabson,* 179 Ala. 444, 60 So. 876, 43 L. R. A. (N. S.) 664; *Cohen* v. *Morneault,* 120 Me. 358, 114 Atl. 307; *Prather* v. *Latshaw,* 188 Ind. 204, 122 N. E. 721; *Elmira Lumber Co* v. *Owen,* 96 Or. 127, 188 Pac. 415; *Piaggio* v. *Somerville,* 119 Miss. 6, 80 So. 342; *Virginia, etc., Co.* v. *Graham,* 124 Va. 692, 98 S. E. 659; *Ess-Arr Knitting Mills* v. *Fischer,* 132 Md. 1, 103 Atl. 91; *Clements* v. *Jackson, etc., Co.,* 61 Okl. 247, 161 P. 216, L. R. A. 1917C, 437; *Stagg* v. *Spray Water Power Co.,* 171 N. C. 583, 89 S. E. 47; *Winfrey* v. *Galena Auto Co.,* 113 Kan. 343, 214 Pac. 781. For additional cases see 13 C. J. 638 *et seq.* In *Day* v. *United States, supra,* it is said that the modern cases may have abated somewhat the absoluteness of the older ones in determining the scope of the undertaking by the literal meaning of the words alone; but that, when the scope of the undertaking is fixed, the contractor takes the risk to that extent. So it is generally held that the appointment of a receiver is ordinarily no excuse for the nonperformance of a contract and does not preclude the prosecution of actions against the corporation, the purpose and effect not being to acquire a lien upon the

property in the hands of the receiver or to interfere with his possession thereof.    See notes 3 A. L. R. 628 and 8 A. L. R. 445, where the cases are collected.

[5]    It is at once apparent that the contingency created by the insolvency of the Traction Company was a liablity contemplated by the parties to the bond.    Indeed it would seem to have been the principal consideration for requiring the security.    The appointment of the receiver was incidental, and in no way affected the primary liability of the defendant, neither as a release nor as postponing the time when liablity would attach. Manifestly this is so when, as here, the plaintiff was a stranger to the receivership proceedings.    The claim advanced by the plaintiff that the receiver in operating the railway was necessarily acting under the franchise and subject to its obligations, so that a cause of action could have arisen through his failure to repair the track area, finds support in some of the cases cited; but we have no occasion to consider the claim, and prefer to place the decision on the broader ground indicated above.

[6]    Neither was the defendant relieved from liability by the use of different material on the portion of the track area west of the Rialto bridge.    The franchise expressly provides that its terms and regulations are subject to change by agreement between the city council and the Traction Company.    This being so, the bond contemplated such a change in the requirement of the franchise, and the defendant's consent thereto was unnecessary.    It appeared in evidence that the change was made on the request of the receiver and that it resulted in a substantial saving of expense.    It is urged that the receiver had no authority to agree to the change.    The plaintiff's answer to this is that he was operating the railway under the franchise and was acting as the representative of the Traction Company.    True, a receiver's duties are administrative and he derives his authority and possessory rights from the court appointing him.    *Underhill* v. *Rutland Railroad*, 90 Vt. 462, 98 Atl. 1017.    But he takes the property of the insolvent in the same condition and subject to all the duties, obligations, and liabilities that rested upon the latter.    *Barthen* v. *Lodi Corporation* (N. J. Err. & App.) 119 Atl. 189; High on Rec. 318.    A corporation is not dissolved by the appointment of a receiver, but continues to exist as a legal entity, while the power of the directors to exercise the incidental powers necessary to carry on its business is superseded thereby.

*Chemical Nat. Bk.* v. *Hartford Deposit Co.,* 156 Ill. 522, 41 N. E. 225. It follows that in some respects he is properly regarded as the representative of the corporation. High on Rec., § 314; *Bartlett* v. *Klein,* 50 N. J. Law, 260, 13 Atl. 7. However, we need not inquire whether the receiver was so far the representative of the company as to enable him to act for it in consenting to the change. If we regard the use by the plaintiff of a cheaper construction as a departure from the contract, the result will be the same. Such a departure would be from its nature beneficial, and could in no way prejudice the defendant. The rule is well settled that a compensated surety is relieved from its obligations for a departure from the contract only when the departure is shown to be material and prejudicial. *Philadelphia* v. *Fidelity & Deposit Co.,* 231 Pa. 208, 80 Atl. 62, Ann. Cas. 1912B, 1085; *M. E. Church* v. *Equitable Surety Co.,* 269 Pa. 411, 112 Atl. 551; *New Haven* v. *National Steam Economizer Co.,* 79 Conn. 482, 65 Atl. 959; *Guaranty Co.* v. *Pressed Brick Co.,* 191 U. S. 416, 48 L. ed. 242, 24 Sup. Ct. 142; *Cambridge Sav. Bk.* v. *Hyde,* 131 Mass. 77, 41 A. R. 193; *City of Chicago* v. *Agnew,* 264 Ill. 288, 106 N. E. 252; *Springfield Lighting Co.* v. *Hobart,* 98 Mo. App. 227, 68 S. W. 942; *Rule* v. *Anderson,* 160 Mo. App. 347, 142 S. W. 358; *Van Buren County* v. *American Sur. Co.,* 137 Iowa 490, 115 N. W. 24, 126 A. S. R. 290; *Bross* v. *McNicholas,* 66 Or. 42, 133 Pac. 782, Ann. Cas. 1915B, 1272; *United Surety Co.* v. *Summers,* 110 Md. 95, 72 Atl. 775; *Peerless Casualty Co.* v. *Howard,* 77 N. H. 355, 92 Atl. 165; Pingrey on Sur., § 101; Stearn's on Sur., § 415; Note Ann. Cas. 1912B, 1087; 21 R. C. L. 1160-1164.

This doctrine is sometimes referred to as a modern rule, but it is merely the application of old principles to the new situation in suretyship matters due to the advent of bonding or surety companies whose business, while in form that of suretyship, is essentially that of insurance. Their contracts are regarded as contracts of indemnity, and, as such, are governed by the rules of construction applicable to contracts of insurance. It is said in *Rule* v. *Anderson, supra,* "The deep solicitude of the law for the welfare of voluntary parties who bound themselves from purely disinterested motives never comprehended the protection of pecuniary enterprises organized for the express purpose of engaging in the business of suretyship for profit. To allow such companies to collect and retain premiums for their

services, graded according to the nature and extent of the risk, and then to repudiate their obligations on slight pretexts that have no relation to the risk, would be most unjust and immoral and would be a perversion of the wise and just rules designed for the protection of voluntary sureties.''

[7]    For the same reason the defendant's claims respecting want of notice to the Traction Company are untenable. If the contract required a formal notice such as the plaintiff attempted to give and the notice sent through the mail failed to reach the officers of the company, matters that were in dispute, the want of notice worked no possible harm to the defendant. The failure of the company to carry out the contract was admittedly in no way dependent upon lack of notice; and the giving of the notice, so far as the rights of the defendant were concerned, would have been an idle ceremony which the law does not require. Under the rule applicable to the case the technical objection is unavailing. It has even been held, when the right of action on such a bond was not made conditional upon notice of the principal's default, that a surety company cannot complain of failure to comply with a requirement for such notice where no damage has resulted therefrom. *Van Buren County* v. *American Surety Co.,* *supra; Bross* v. *McNicholas, supra; Gustafson* v. *Swanson,* 131 Ill. App. 585; *Illinois Surety Co.* v. *Huber,* 57 Ind. App. 408, 107 N. E. 298; *School District* v. *McCurley,* 92 Kan. 53, 142 Pac. 1077, Ann. Cas. 1916B, 238; *Ætna Indem. Co.* v. *Waters,* 110 Md. 673, 73 Atl. 712; *Molin* v. *New Amsterdam Cas. Co.,* 118 Wash. 208, 203 Pac. 8; *Sykes* v. *Sperow,* 91 Or. 568, 179 Pac. 488.

[8, 9]    It is claimed that the action cannot be maintained because the plaintiff had filed its claims against the Traction Company in the receivership cause, where the matter was still pending; and that the court of chancery alone has jurisdiction of claims against the receiver. The argument is based upon the mistaken theory that the claim in suit is a receivership matter. As seen, the liability of the defendant is wholly independent of any default on the part of the receiver. But if the claim against the Traction Company was a proper item of charge in the receivership proceedings, the defendant's liability on the bond is not affected by the pendency of such claim in the court of chancery. The bond is a joint and several obligation. The plaintiff

would have two remedies, one against the Traction Company for the breach of the contract and the other against the defendant for the penalty of the bond. These remedies, if pursued, would not be for the same claim in contemplation of law. *Keel* v. *Larkin*, 83 Ala. 142, 3 So. 296, 3 A. S. R. 702. The doctrine of election of remedies does not apply. The remedies are not inconsistent but are merely cumulative. Both may be pursued at the same time until plaintiff's damages are once satisfied. *Town of Pawlet* v. *Kelly*, 69 Vt. 398, 38 Atl. 92; *Perry* v. *Shumway*, 73 Vt. 191, 50 Atl. 1069. The earlier case is quite in point. The plaintiff presented its claim against the insolvent estate of a defaulting tax collector and obtained a dividend thereon. It also brought suit on the collector's bond, in which a surety relied upon the claim that he was discharged by reason of the plaintiff's election of remedies. It was held that the remedies were not inconsistent and that a creditor may pursue both until he obtains satisfaction of his debt. Moreover, the defendant is in no way injuriously affected. The action complained of may or may not have been wholly gratuitous on the part of the plaintiff, as to which see 21 R. C. L. 947, 1032-1040, 1124-1127. Be that as it may, the plaintiff can have but one satisfaction of its damages, and any recovery will necessarily operate for the defendant's protection and inure to its benefit.

[10] The contention is made that to permit the plaintiff to recover on the evidence amounts to a confiscation of the defendant's property and a denial of due process of law under the Fourteenth Amendment of the Constitution of the United States. The foundation of the claim is but a repetition of the reasons assigned why the defendant should be held to be released from its contract of suretyship. It is enough to say that the defendant's liability is primary and direct. *Champion, etc., Co.* v. *American Bonding Co.*, 115 Ky. 873, 75 S. W. 197, 103 A. S. R. 356. The action is upon the bond and not upon the contract. The latter is important in this action only as it bears upon the question whether there has been a breach of the bond. It sufficiently appears from what has been said that the evidence made a case for the plaintiff on that issue. Counsel fail to point out and we are unable to discover wherein the defendant has been denied due process of law.

[11, 12] The defendant makes complaint respecting the amount allowed by the jury by way of interest. The only ques-

tion saved is presented by an exception to the charge.  The court in effect instructed the jury that the Traction Company had a reasonable time after the cost of the repaving was certified to the company in which to verify the charges; and that they should first determine what would be a reasonable time in the circumstances and allow interest on the plaintiff's claim from the expiration of such time.  To this the defendant excepted, claiming that no interest could be recovered until demand had been made upon the defendant.  The charge was without error.  Within the limits fixed by the penalty of the bond, the extent of the Traction Company's liability measures the liability of the defendant.  21 R. C. L. 974; *St. Albans Bank* v. *Dillon,* 30 Vt. 122, 73 A. D. 295.  Under the charge interest was to be computed from the time when, by the terms of the contract, the cost of repairing was due and payable.  The prevailing rule as to interest upon the damages ascertained in an action against the surety on a bond is that the interest period is controlled by the right of the obligee to interest upon the damages against the principal.  When the circumstances are such that the principal is chargeable with interest on the damages accruing from the breach of the bond, and such damages are equal to or exceed the penalty, the interest period on the penalty will commence at the same time as that against the principal on such damages.  Under this rule, when the bond is breached the penalty to the amount of the damages immediately becomes the debt of the surety and bears interest, the same as any other debt on contract, if the principal claim bears interest.  *Whereatt* v. *Ellis,* 103 Wis. 348, 79 N. W. 416, 74 A. S. R. 865; *National Bank* v. *Baker,* 58 Ill. App. 343; *Wyman* v. *Robinson,* 73 Me. 384, 40 A. R. 360; *Burchfield* v. *Haffey,* 34 Kan. 42, 7 Pac. 548; *Ellyson* v. *Lord,* 124 Iowa 125, 99 N. W. 582; *City of Camden* v. *Ward,* 67 N. J. Law, 558, 52 Atl. 392; *Marshall* v. *Minter,* 43 Miss. 666; *Mullen* v. *Morris,* 43 Neb. 596, 62 N. W. 74; *James* v. *State,* 65 Ark. 415, 46 S. W. 937; *Holmes* v. *Standard Oil Co.,* 183 Ill. 70, 55 N. E. 647; *American Surety Co.* v. *Pacific Surety Co.,* 81 Conn. 252, 70 Atl. 584, 19 L. R. A. (N. S.) 83; *Bank of Brighton* v. *Smith,* 12 Allen (Mass.) 243, 90 A. D. 144; 21 R. C. L. 1087; 4 R. C. L. 69; Note, Ann. Cas. 1914C, 1194; see *Williams* v. *Willson,* 1 Vt. 266.

It is unnecessary to consider the defendant's exceptions further in detail.  The numerous questions presented in the brief could better have been grouped to avoid needless repetition.

They have all been examined and are sufficiently covered by what has been said, or are found to relate to matters rendered immaterial by the decision of the main questions in the case. The record discloses no reversible error.

*Judgment affirmed.*

NOTE:—MILES, J., having retired took no part in the disposition of the case.