## FIDELITY SAFE DEPOSIT & TRUST CO. *v.* ARMSTRONG.

*(Circuit Court, S. D. Ohio. May 11, 1888.)*

LANDLORD AND TENANT—LEASES—NATIONAL BANKS—INSOLVENCY.
> Where a national bank takes a lease for a long term, its insolvency and dissolution soon afterwards, and the appointment of a receiver, who refuses to take possession of the leased premises, do not entitle the lessor to damages out of the assets, the rent having been paid for the time during which the bank was in possession.

In Equity. Bill by the Fidelity Safe Deposit & Trust Company against Armstrong, receiver of the Fidelity National Bank of Cincinnati, to recover upon a lease.

*Drausin Wulsin*, for complainant.
*C. W. Kittredge* and *W. B. Burnett*, for respondent.

SAGE, J., (*orally.*) The bill sets forth, in substance, that on the 1st of March, 1886, the complainant made a contract which, although not stated in the bill to be, in terms, was, in effect, a lease of the premises occupied by the Fidelity National Bank, in the St. Paul building, Fourth street, Cincinnati, for 20 years, at an annual rental of $5,600, payable

in monthly installments, at the end of each month. That the Fidelity National Bank entered into possession under this contract, and so continued until the 20th of June, 1887, when the comptroller of the currency took possession of the property and assets of the bank, and the bank suspended operations. That on the 27th of June, 1887, the defendant was appointed receiver, and entered into possession of the property of the bank, and has ever since continued as receiver. That on the 30th of June, 1887, the comptroller of the currency instituted proceedings which resulted in the forfeiture of the charter of the Fidelity National Bank, by an order made by this court on the 12th of July, 1887. That the assets which passed into the hands of the receiver are insufficient to pay the debts of the bank. That there are due for rent upon this lease various amounts, set forth in the bill of the complainant, being $155.55 for the month of June, 1887, and $291.66 for each of the months September, October, November, and December, 1887. There is no explanation in the bill of this diminished amount, but the statement was made by counsel upon the argument that the receiver occupied the premises during those months upon an agreement at that sum, which, being paid, reduced the rent to the sum of $291.66, instead of $455.55; and this arrangement reserved all rights of both parties, without prejudice to the rights of either. The bill proceeds to state that the premises are vacant; that the receiver refused to enter into possession; that the value of the premises is decreased to $3,000 per annum; and that the complainant has been damaged in the sum of $50,000—*First*, by reason of the insolvency of the Fidelity National Bank; *second*, by reason of the dissolution of the corporation; *third*, by reason of the forfeiture of its charter; and, *fourth*, by the refusal of the receiver to take under the contract, and pay the rent. The claim was presented to the receiver, and rejected. One dividend has been declared, and others are to follow. And the bill proceeds to aver that the complainant will be entirely without remedy unless allowed to prove for a gross sum, which shall be a commutation of the entire rent,—or rather, the present value of the rent for the entire term, and receive dividends thereon. The prayer is that the receiver be required to withhold from the assets in his hands the sum of $50,000, to meet the damages from month to month, or that the cash value may be ascertained, and the complainant be allowed to prove claim for the same.

The grounds of the damages claimed, I have already stated. The first ground, "by reason of the insolvency of the Fidelity Bank," seems to me to have nothing whatever in it. Suppose this lease had been for one month, or for three months, and the bank, having paid the rent in advance, had become insolvent just before the expiration of the term, and thereby the rental value of the premises had been diminished, could it be maintained that the lessor would be entitled to claim damages against the lessee? It seems to me, certainly not.

Now, the second claim, "by reason of the dissolution of the corporation," that is not anything for which the receiver can be held liable; nor can he be held liable for the forfeiture of the charter of the Fidelity

Bank, because both of these results are provided for by law, and must have been, in the eye of the law, in contemplation of the parties when the lease was made. These were contingencies which it was the duty of the lessor to take into account when he made his contract, and, if not satisfied to rely upon the bank itself, the only other course would have been to insist upon security for the performance of the conditions of the lease.

As to the claim for damages by reason of the receiver—of the defendant—refusing to take under the contract and pay the rent, it is settled by all the authorities that the receiver was not bound to take possession. He had his election to take or not to take. If satisfied that the lease was valuable as an asset of the bank, he might take possession, and, having taken possession, would be liable for the payment of the rent; but if satisfied that the lease was of no value, and that it would be of no interest to the trust—to the creditors,—he might refuse to take possession.

The claim of the complainant, however, was argued upon the hypothesis that the case was to be regarded as a breach of the contract by the Fidelity National Bank to pay rent for which a claim might be proven against the receiver. The difficulty is that during the existence of the bank, and up to the time when the receiver took possession, there was no breach. The rent was payable at the end of each month; and it was paid for the entire time that the bank was actually in occupation of the premises. The bank ceased to occupy the premises on the 20th day of June, 1887; the defendant was appointed receiver on the 27th day of June, 1887, and entered into and took possession of all its property. The default occurred later. On the 12th of July, 1887, the charter of the Fidelity Bank was forfeited, and the bank thereby passed out of existence, and this complainant ceased to have any party with whom to deal in reference to that contract; and the lease was necessarily terminated, because the lessee had ceased to exist, and had no successors who, in the eye of the law, stood in its place. Now, if there had been a default at the time of the appointment of the receiver, and of his taking possession of the premises, that claim might have been proven against the receiver. But there was no such claim. The claim is subsequent; and it was held in *Deane* v. *Caldwell*, 127 Mass. 242, decided by Chief Justice GRAY, now of the supreme court, that "before the date at which rent is covenanted to be paid it is in no sense a debt; it is neither *debitum* nor *solvendum*, for if the lessee is evicted before that day it never becomes payable. It is not within the provision of a bankrupt act, allowing 'uncertain or contingent demands' to be proved against the estate of a bankrupt, because it is not an existing demand, the cause of action on which depends upon a contingency, but the very existence of the demand depends upon a contingency." But it was contended by the complainant that as in that case the claim might be set up against the bankrupt himself, notwithstanding his discharge in bankruptcy, and as in this case the Fidelity National Bank was—to use the expression of counsel—"cremated," or rather, stricken out of existence, by the forfeiture of its charter, and the receiver has taken possession of all the assets and property, and has instituted a suit against the directors to enforce their liability, or al-

leged liability, for negligence in the administration of the affairs of the bank, and proposes to appropriate all that can be realized from the individual liability of the stockholders, and leaves nothing in any direction to which this complainant can look, that this case ought to be an exception. The answer is that all these proceedings of the receiver are in strict conformity with the statute, which was in force at the time this lease was made, and which this complainant was bound to recognize. And, having failed to provide against the contingency that has arisen, he is not entitled to the relief which he seeks by this bill of complaint. The demurrer, therefore, will be sustained, and the bill dismissed.