## In re McALLISTER–MOHLER CO.
### No. 6924.

District Court, S. D. Ohio, E. D.

June 12, 1930.

Opinion of Referee on Claim of Hi-Lynn Company.

### The Facts.

The controlling facts briefly stated are as follows:

The claimant, the Hi-Lynn Company, and the bankrupt are both Ohio corporations

with their principal places of business in the city of Columbus.

On February 7, 1920, Francis R. Huntington and B. Gwynn Huntington, as lessors, entered into a certain lease with the bankrupt wherein there was demised to the bankrupt for a term of fifteen years the property on High street in the city of Columbus heretofore occupied by the bankrupt. The term of the lease was from April 1, 1922, to March 31, 1937.

On the 2d of January, 1923, the Hi-Lynn Company, the claimant herein, became and now is the owner of the estate, right, and title of said Francis R. Huntington and B. Gwynn Huntington in and to said lease.

The bankrupt duly entered into the property and paid the stipulated rental according to the terms of the lease, up to April 1, 1929.

On March 22, 1929, the common pleas court of Franklin county, Ohio, appointed receivers in equity for the McAllister-Mohler Company, bankrupt herein, who duly qualified as such and entered into and proceeded with the liquidation of the assets of the bankrupt company. The receivers occupied the demised premises up to July 6, 1929, at which time they surrendered possession and delivered the keys of the premises to the claimant. Previously the receivers had concluded there was no equity in the lease and elected not to accept it.

On July 15, 1929, an involuntary petition in bankruptcy was filed against the bankrupt herein and thereafter an adjudication was duly had, and the cause was referred to the undersigned for administration, and on August 16, 1929, a trustee in Bankruptcy was duly elected by the creditors, qualified as such, and is now so acting.

The trustee paid the claimant herein the sum of $8,516.12 for the use and occupation of the premises for the period beginning April 1, 1929, and ending July 6, 1929, but neither he nor the receiver exercised any jurisdiction over the demised property.

No proceedings to wind up or dissolve the bankrupt corporation have been instituted, and it, as a legal entity, is still subsisting.

According to the terms of the lease, the lessees were to pay as rent for the first five years the sum of $27,000 per annum, for the succeeding five years the sum of $32,000 per annum, and for the remaining five years the sum of $37,000 per annum, the rent being payable quarterly on the first days of April, July, October, and January of each year.

The lessees also covenanted to pay as part consideration for the lease all taxes, assessments, etc., which were charged or imposed against the property during the term of the lease. The lease contains the further provision that, in the event any installment of rent shall not be paid, or if the taxes or assessments become in arrears, then, at the option of the lessors and upon giving twenty days' written notice to the lessee, the lease and estate thereby demised shall at the lessor's option be thereby terminated, and that no re-entry, as for condition broken, as at common law, shall be necessary to enable the lessors to make any demand upon the lessees or to serve any notice whatever upon it in order to work a forfeiture of the lease and all such demands, notices, and re-entries are expressly waived by the lessees.

On the 12th day of June, 1929, the claimant herein filed with the receiver a claim for damages for the breach of said contract of lease and sought thereby to have allowed against the estate a claim for taxes amounting to $16,359.28, unpaid rent then due amounting to $6,400, a future rent for the balance of the term of $274,600.02, and future taxes estimated in the sum of $10,093.15 annually. Also a sum, in blank, to cover the annual average cost of insurance and offering to credit such sums with any receipts which the claimant might realize out of the property by lease or otherwise during the balance of the term of said lease. This claim was rejected by the receiver.

Thereafter on the 16th day of August, 1929, at the first meeting of the creditors of the bankrupt, the claimant herein submitted for allowance its duly verified proof of claim for damages arising from the breach of said lease and asked that the same be allowed:

(a) For the sum of $8,516.12 on account of the rent from April 1 to July 6, 1929.

(b) $16,057.58 on account of taxes and assessments, together with interest.

(c) $7,483.88, being the installment of rent due July 1, 1929, less $516.12 for six days occupied by the receiver, together with interest.

(d) The sum of $61,726.67, the same being the present value of the difference between the amounts of rentals and payments stipulated in said lease to be paid by the lessee and the present fair market value of said premises, assuming a lease of said premises for seven years and eight months.

The allowance of this claim was objected to by the trustee in bankruptcy, and thus is

raised the issue which is submitted for the consideration of the undersigned.

### The Law.

The broad underlying question to be decided is whether or not the amended proof of claim of the Hi-Lynn Company is one provable in bankruptcy. Specifically these questions are raised:

(a) Under what circumstances, if any, does the doctrine of anticipatory breach of contract apply to leases of real property, where a tenant becomes insolvent prior to the termination of the demise?

(b) Whether a claim for damages based on such a breach, assuming that the doctrine is recognized as applying to leases, is provable under the Bankruptcy Act.

It is maintained by counsel for the trustee in bankruptcy that the decision of the Court of Appeals for the Sixth Circuit in the case of Wells v. Twenty-first Street Realty Co., 12 F.(2d) 237, is determinative of the issue involved.

It is maintained by counsel for the claimants that the Wells Case does not apply, and that the pronouncement of the United States Supreme Court in Filene's Sons Co. v. Weed, 245 U. S. 597, 38 S. Ct. 211, 62 L. Ed. 497, controls.

A proper determination of the matter involves not only these two cases but numerous other decisions both of the federal and Ohio courts, and as these cover a broad field partially overlapping in many instances, diverging in some, and explanatory in others, it will aid materially in interpreting their meaning to review and to group them under their proper headings.

These decisions naturally group themselves under the following headings:

I. Instances in which a tenant, under a lease containing the usual provisions, has been declared a bankrupt and the landlord seeks to prove a claim for damages on account of the anticipatory breach, through bankruptcy, of the contract of lease.

II. Instances in which a tenant by the terms of the lease agrees to indemnify the landlord for any loss occasioned by the breach thereof and a fixed sum is agreed upon as liquidated damages.

III. Instances in which a contract relating to things personal has been breached through bankruptcy, and the claimant elects to regard the bankruptcy as an anticipatory breach of the entire contract and to prove damages therefor.

IV. Instances in which the breach by the tenant results in a cancellation of the lease by operation of law.

I. The principal cases under this heading are: Wells v. Twenty-first St. Realty Co. (C. C. A.) 12 F.(2d) 237; In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270; Watson v. Merrill (C. C. A.) 136 F. 359, 362, 69 L. R. A. 719. There are numerous other decisions all of which are referred to in the cases above cited, and to discuss them in detail would be an interminable task. Suffice it to say that they all are grounded on the principle of Lord Coke, who in his comment on Littleton, on 292b, says that the rights of the parties under a contract relating to personalty and one relating to realty are different because of "the diversity between duties which touch the realty and the mere personalty."

This distinction is explained by the court in the case of Bordman v. Osborn, 23 Pick. (Mass.) 295, in which we find, in the syllabus and in the opinion, the following: "Rent is a sum stipulated to be paid for the actual use and enjoyment of another's land, and is supposed to come out of the profits of the estate. The actual enjoyment of the land is the consideration for the rent which is to be paid, and, therefore, if the lessee is evicted before the rent becomes due, in whole or in part, it is a good answer to a claim for rent, by an action of debt or covenant, or by distress. * * * From this it seems clear, that although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt accrues until such enjoyment has been had; because, says Lord Coke, in discussing the effect of a release, a debt is merely a thing in action, and, therefore, if a man be bound to the payment of a debt, at a future time, a release of all actions by the obligee, is a perpetual bar, for 'albeit no action lyeth for the debt, because it is debitum in praesenti, quam vis sit solvendum in futuro, yet because the right of action is in him, the release of all actions is a discharge of the debt itself.' Co. Lit. 292b. And the next section is still more explicit. But if a man leaseth land for a year, reserving a rent payable at Michaelmas, and before that time releaseth all actions, yet after said feast he shall have an action of debt. The reason, says Lord Coke, is that it was neither debitum nor solvendum when the release was made; for if the land be evicted from the lessee, before the rent become due, the rent is avoided, for it is to be paid out of the profits of the land. Co. Lit. 292b."

The court then goes on to quote from the case of Wood v. Partridge, 11 Mass. 488, in which the court there says: "But a covenant to pay rent quarterly creates no debt or legal demand for rent, till the time stipulated for payment arrives. The rent may never become due. The lessee may be evicted, etc. It is not the case of debitum in praesenti, solvendum in futuro. It was a mere contingency."

This distinction is found and recognized by all of the higher federal courts from the Supreme Court down. Indeed the Supreme Court of the United States in the case of Gardiner v. William S. Butler & Co., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 506, and in the so called Chicago Auditorium Case, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. page 811, specifically referred to the doctrine set forth by Lord Coke, and in the latter case a direct quotation is made from that authority.

Accordingly, in the case of Watson v. Merrill, 136 F. 359, 362, 69 L. R. A. 719, decided by the Eighth United States Circuit Court, Judge Sanborn uses the following language: "The use and occupation of the premises during the term of the lease were the consideration for the payment of the monthly rents, and the payment of the rents was the consideration for the use of the premises." As a corollary of this: "If the rent for any month was not paid, * * * the lessor had the option to repossess himself of the premises, and to withhold from thenceforth the consideration for future installments of rent, or to permit the lessee to continue in possession of the property, and to enforce the collection of the rents by an action or by some other proceeding. He could not, however, do both."

The Supreme Court of the United States specifically in the Gardiner Case, 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. on page 506, recognizes the doctrine and stamps it as the English tradition that: "In the absence of statute or express contract a lessor who has terminated a lease and evicted the tenant has no further claim against the lessee."

The Second Circuit Court of Appeals in the case of In re Roth & Appel, 181 F. page 667, on page 669, 31 L. R. A. (N. S.) 270, recognizes this doctrine and quotes with approval from Watson v. Merrill, Coke on Littleton, and Wood v. Partridge, supra.

This leads to the natural inquiry as to why this rule, which is peculiar to leases, obtains, and the answer would seem to be that a claim for damages for the anticipatory breach of a covenant to pay rent is both illogical and contradictory.

As is stated by our own Circuit Court of Appeals in the case of In re Neff, 157 F. page 57, 62, 28 L. R. A. (N. S.) 349: "The creditor by offering to file his claim [for anticipatory breach of contract] manifests his election to treat the contract as broken." And of course that means the whole contract including the lease, which in turn is equivalent to ejecting the tenant. As a result thereof there can be no claim for future rent.

"Massachusetts has followed the English tradition and we believe that it is the general understanding in that State that in the absence of statute or express contract a lessor who has terminated a lease and evicted the tenant has no further claim against the lessee." Gardiner v. William S. Butler & Co., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505, 506.

That such a claim, i. e., anticipatory breach, is really for future rents is pointed out by Judge Sanborn in the case of Watson v. Merrill, supra, at page 361 of 136 F.: "While counsel and the referee called this allowance [of claim] damages for a breach of the lease, it is in fact nothing but that part of the monthly rent which was to accrue."

To again quote Judge Sanborn: The landlord may repossess himself of the premises or permit the lessee to continue in possession of the property and enforce the collection of the rents, but he cannot do both.

A damage claim for an anticipatory breach of a lease clearly contemplates the landlord "doing both." He is taking back his property and at the same time seeking to recover future rentals by filing a claim against the tenants' estate.

Other authorities reject the anticipatory damage claim for the reason that it is merely a speculative or a contingent matter not in being at the time of the filing of the bankruptcy petition, and uncertain as to its future existence.

There is a further important consideration which runs through all of these cases, namely, that the insolvency of the tenant does not release him from his obligation to pay future rent, and accordingly in the case of In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270, the Court of Appeals for the Second Circuit laid emphasis on this feature of a bankruptcy proceedings, and on page 670 of 181 F. said: "if the lessee remain liable upon the lease after his bankrupt-

cy in cases where it is not assumed by the trustee, it necessarily follows that his estate is not liable thereon." And in the case of In re Mullings Clothing Co. (C. C. A.) 238 F. 58, on page 68, the court says, referring to the action then under consideration: "It has no analogy to a case of ordinary bankruptcy of an insolvent tenant. The filing of the petition in bankruptcy in such a case does not terminate the relation of landlord and tenant, but the tenant remains liable for the future rent as it accrues. It does not end the capacity of the tenant to engage in future business and to acquire other assets which can be reached by the lessee in subsequent proceedings for the payment of the rent which subsequently accrues. It does not involve an abandonment of the lease, and does not disable the tenant from afterwards performing its covenants."

My conclusion therefore is that at common law the doctrine of anticipatory breach of contract does not apply to leaseholds, and this is what I understand our Circuit Court of Appeals decided in the Wells Case, and it reached out further and decided that the rule applies in Ohio because this common-law rule as to leaseholds has not been modified by legislative enactment.

It is maintained by counsel for the Hi-Lynn Company that not only was our Circuit Court in error in construing the Ohio authorities, but the facts in the Wells Case are not parallel to those in the instant case, and therefore the decision of the Wells Case is not binding.

I am bound, willy-nilly, by the decision of our Circuit Court of Appeals on the question of the application of the common-law rule as to leases in the state of Ohio, and at most I may only point out wherein I think counsel for the Hi-Lynn Company may be in error himself.

On the question of whether or not the facts in the two cases are parallel I have a comparatively free hand and I will refer to this and the other matter later on in my opinion.

II. Under this heading it is sufficient to merely cite the heretofore referred to Filene and Gardiner Cases [245 U. S. 597, 38 S. Ct. 211; 245 U. S. 603, 38 S. Ct. 214] reported on pages 497 and 505, respectively, of 62 L. Ed. of the Supreme Court Reports. The facts in these cases are essentially different from the facts in the instant case.

In the former there was a provision in the lease authorizing liquidated damages and fix-ing the method of their computation, and the court was particular in its opinion to limit the rights of a landlord in this respect to cases in which there was either a contract for liquidated damages between the parties, or some statutory enactment to the same effect.

These cases are a complete answer to the contention that, if a landlord cannot prove a claim for anticipatory breach of a lease, he is remediless, for it is clearly within his power to protect himself by an appropriate clause in the lease. To the same effect is the case of Taylor Trust Co. v. Kothe (C. C. A.) 30 F.(2d) 77.

III. The leading case under this heading is what is commonly called the Chicago Auditorium Case, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. page 811. In his opinion, Mr. Justice Pitney, 240 U. S. 581, 36 S. Ct. 412, 414, 60 L. Ed. page 815, says: "Whether the intervention of bankruptcy constitutes such a breach and gives rise to a claim provable in the bankruptcy proceedings is a question not covered by any previous decision of this court, and upon which the other Federal courts are in conflict." The court then cites many cases pro and con and concludes with a list that arise out of the relations of landlord and tenant. These latter the court clearly distinguishes as beside the facts under consideration and uses this language: "Cases of the latter class [arising out of the relation of landlord and tenant] are distinguishable because of the 'diversity between duties which touch the realty, and the mere personalty.' Co. Litt. 292b, § 513." This quotation is used by Judge Donahue in the Wells Case and cannot be ignored.

This distinction between leases and mere personalty contracts is clearly recognized by inference in the Filene and Gardiner Cases, and it is specifically recognized by the United States Circuit Court of Appeals, Second Circuit, in the case of Pennsylvania Steel Co. v. New York City Railway Co., 198 F. 721.

In the Pennsylvania Case the contract breached related purely to personalty. It was in no sense a lease. On page 744 of 198 F., the court says in its opinion: "That contract granted the right to do the 'express, freight and delivery business' on the roads of the Metropolitan system. The receivers took possession of the roads and excluded the Express Company and its assignee." In the footnote the court calls attention particularly to the fact that: "It should be observed that there is no analogy between a case like the present one and the bankruptcy cases relating to leases of real estate like In re Roth

& Appel, 181 F. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270. In those cases it is held that the estate in lands which passes to a lessee is not divested by his bankruptcy when the trustee does not elect to assume the lease. Under such conditions the bankrupt lessee retains the lease upon the same footing as before. In other words the situation of the leasehold interest is as if nothing had happened."

For these reasons it is clear to my mind that the Filene, Gardiner, and Chicago Auditorium Cases, decided by the Supreme Court, and the Pennsylvania Steel Co. Case decided by the Circuit Court of Appeals, Second Circuit, supra, in no way conflict with the decision of our Circuit Court in the Wells Case, and they are not applicable to the case at bar.

IV. The cases falling under this classification are the stormy petrels of the authorities on anticipatory breaches, as bearing upon the relation of landlord and tenant. The principal cases are as follows: In re Mulling's Clothing Co. (C. C. A.) 238 F. 58; People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129; Ex Parte Linvi Coal & Iron Co., L. R. 7 C. H. App. 288; Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332. A careful consideration of these cases discloses that the controlling facts existing in those cases do not exist in the case at bar. In the American cases referred to in every instance there was a dissolution of the corporation sought, and, as was pointed out by the Minnesota court, the tenant in effect became a suicide. The lessee ceased to exist and had no successors, who, in the eye of the law, stood in its place; and the lease was necessarily terminated. Fidelity Safe-Deposit & Trust Co. v. Armstrong, 35 F. 567–569 (U. S. Circuit Court, S. D. of Ohio). In the English cases the decision rested upon the interpretation of the then Bankruptcy Act which provided, among other things, that a bankrupt is discharged of all of his contractual liabilities, actual or contingent.

The net result is that in all instances the lease was by operation of law canceled and the landlord deprived of his election to hold the tenant. Obviously such a situation brings these cases within the definition of the Supreme Court in the Gardiner Case supra. I quote from the second syllabus in the L. Ed.: "The purchaser of a reversion may not, after terminating the lease and evicting the tenant, make, in the absence of statute or express contract, a further claim against the lessee for the damages which he claims to have suffered by reason of losing the benefit of his bargain from the time of re-entry."

I have examined closely the authorities cited by counsel for the Hi-Lynn Company as well as those referred to by various courts which are relied upon as authority for the statement that an anticipatory breach of a lease may give rise to a claim for damages for future rentals against a receiver in equity who has been appointed to liquidate the assets on an insolvent tenant, but not one of these cases sustains this broad proposition.

The majority of the cases, such as the Minnesota case, supra, and the New York case, arose through a dissolution proceeding. In Illinois there are three cases referred to, namely, the Chemical Nat. Bank v. Deposit Co., 156 Ill. 522, 41 N. E. 225; Smith v. Goodman, 149 Ill. page 75, 36 N. E. 621, and Chicago Fire Place Co. v. Tait, 58 Ill. App. 293.

Of these cases the first was an action by the lessor brought against the lessee and the receiver, and the question under consideration was merely the right of the landlord to sue the tenant after the appointment of a receiver, and the only rents apparently attempted to be collected in the action were those that were past due and owing at the time the suit for recovery was instituted. This case is an authority, however, for the proposition that the insolvency of the tenant and the appointment of the receiver do not cancel the lease.

In the case of Smith v. Goodman, which is found repeatedly referred to in support of the general proposition referred to supra, the rights of the landlord turned entirely upon a provision in the lease authorizing the landlord in case of default to relet and charge the tenant with the full deficiency. This case belongs to the class of the Filene and Gardiner Cases.

But in the case of Chicago Fire Place Co. v. Tait, there was a denial of the right to prove future rents, and the landlord was only permitted to prove a claim for rents due "At the time of such allowance [of the claim]." In that case a receiver in equity had been appointed for the tenant.

The case of Hoyle v. Scudder, 32 Mo. App. 372, involved the construction of the Missouri statute as to assignments for the benefit of creditors, and the claim presented was not one for rent, but for damages to the physical condition of the property, under a provision of the lease clearly covering the same.

In the case of the Reading Iron Works, 150 Pa. page 369, 24 A. 617, we find that the

decision therein turned on the language of the lease itself, and the rights of the parties were decided in accordance therewith. The court, however, questioned the right, in the absence of special agreement, to prove a claim for future rent, and accordingly this question is found in the syllabus itself: "Query, whether a lessee's assignment for creditors and abandonment of the premises during the term amount to a breach of the convenant to pay rent so that the lessor may have a present cause of action for damages for rent not yet accrued."

The Supreme Court of Maryland decided, in the case of Woodland v. Wise, 112 Md. page 35, 76 A. 502, that only such rentals as were due up to the last distribution of the receiver can be proved in the case of an insolvent tenant. The same case is also authority for the proposition that a receiver in equity for the tenant does not release the tenant nor does a reletting by the landlord under such circumstances.

And finally we come to the decision of our own Circuit Court found in the 35 F. page 567, and known as Fidelity Safe-Deposit & Trust Co. v. Armstrong, decided by Judge Sage, the syllabus whereof is as follows: "Where a national bank takes a lease for a long term, its insolvency and dissolution soon afterwards, and the appointment of a receiver, who refuses to take possession of the leased premises, do not entitle the lessor to damages out of the assets, the rent having been paid for the time during which the bank was in possession."

The case of Bolles v. Crescent Drug & Chemical Co., 53 N. J. Eq. page 614, 32 A. 1061, 1063, sometimes cited as authorizing the collection of future rentals in claims for damages, upon examination is found to be decidedly to the contrary, and lays down the doctrine: "In this country the doctrine in respect to the right of the landlord to prove his subsequent rent varies. In some jurisdictions, following the earlier English cases already mentioned, no right in the landlord is recognized, while in other jurisdictions a contrary view has been adopted." The court then goes on to say in referring to the discharge of a bankrupt tenant from his liability on a lease under the English Bankruptcy Act: "The landlord being deprived of his right of action against the bankrupt can therefore prove against the estate in respect to any claim for which he could have sued the bankrupt if solvent."

There is a decision by the Michigan Supreme Court in the case of McGraw v. Union Trust Co., 136 Mich. 521, 99 N. W. 758, which apparently sustains the contention of counsel for the Hi-Lynn Company. It is, however, not a well-considered case on this point, admits the authorities are divided on the question, and gives no reasons for its conclusions.

When we come to consider the Ohio authorities we are not fortunate in having a direct determination of this matter by an Ohio Appellate Court. It is true that our Supreme Court apparently in the case of Wilder v. McDonald, 63 Ohio St. 383, 59 N. E. 106, authorized the proof of a claim for future rentals in a case where the tenant had made an assignment. But a careful examination of the case discloses that what the court says in this respect was pure obiter, hence it is of no weight.

The case of Baker v. Herrlinger, 16 Ohio App. page 253, is not conclusive, but it does inferentially limit the claim to the damages actually sustained at the date of assignment or at most up to the date of the judgment which the landlord obtained pending the assignment. In that case no future rents or charges were either asked for or allowed. The lease had apparently expired when the suit was instituted. The language of the court, however, on pages 261 and 262 of 16 Ohio App., is very pertinent as indicating the opinion of the court that future rentals could not be allowed. The court says:

"It is further contended that if the lease was of long duration the trust might be held open for an indefinite time. It is necessary for a creditor to present his claim within the time allowed by the provisions of the code, and to be able to prove his damage at the time of the trial. If he cannot do this, his proof fails, as in any other case.

"The creditor in the case now under consideration was able to submit proof of his damage without prejudice to the time of winding up the estate, so that such contention need not here be considered further.

"The measure of damage is also a controverted point. It is a general rule that damages for the breach of a contract must be shown with certainty, and not be left to speculation or conjecture. At the time of the trial the plaintiff was able to show with certainty what loss had been sustained as a direct result of the breach of the contract. * * *

"The lessors re-rented the premises, and were in a position to show at the trial the loss or rent actually sustained, to-wit, the amount due as agreed rent, less what they

received for the use of the premises by renting to others after they had been abandoned by the lessee."

Another case referred to by counsel for the Hi-Lynn Company is the so-called Wrubel Case, 11 Ohio Cir. Ct. R. 559. An examination of this case, however, shows that it is in no sense controlling, as the action was based on the guaranty of the performance of a lease and was not for the liquidation of the claim for rental against the tenant; indeed the suit was not against the tenant nor the tenant's estate. The guaranty sued on specifically covered "the entire time of the lease." The distinction is obvious.

■ It is my conclusion therefore that in Ohio this question has not been definitely determined by the appellate courts, and, in so far as the Ohio decisions are concerned, the question of what may be proved as damages by a landlord where the tenant has either made an assignment or been placed in receivers' hands in equity is an open one. The Ohio federal authorities, however, have rejected a proof of claim for future rents, and I am bound by their conclusions.

### Consideration of the Contentions Set Forth by Counsel for Hi-Lynn Company.

As heretofore stated, while I am bound by the decision of the Circuit Court of Appeals in the Wells Case, I am not precluded from assigning reasons why in my opinion the decision is sound.

Some of these authorities I have referred to before, but there remains one which has been specifically mentioned which I will touch on briefly now, namely, the case of Ralston Steel Car Co. v. Ralston, 112 Ohio St. 306, 147 N. E. 513, 39 A. L. R. 334, which is a later decision than the Wells Case and which counsel claim would have materially modified the latter decision had it been announced anterior thereto.

I cannot subscribe to counsel's argument in this respect. In the first place there was but one question under consideration by the court in that case, namely, whether a permanent leasehold renewable forever is a freehold estate in real property. The decision of this question involves, as Chief Justice Marshall said in his opinion on page 307 of 112 Ohio St., 147 N. E. 513, 514: "The legal question is purely one of statutory interpretation." The court then sets forth and reviews various statutes of the state of Ohio, none of which have any bearing whatsoever upon the question in the instant case.

Counsel claims that certain prior decisions of the Supreme Court were overruled by its later decision in Ralston Steel Car Co. v. Ralston, but the court's own opinion negatives this averment, for on page 317 of 112 Ohio St., 147 N. E. 513, 517, the court says: "It is sufficient to say that it is not believed that the conclusions we have reached in the instant case are violative of any expression of any former member of this court, where the expression was not clearly obiter." Finally in the concluding paragraph of the opinion we find an expression of the court which clearly places the decision beyond the bounds of our inquiry. The court says: "We agree with Judge Welch that such an instrument [a permanent leasehold] is not in any true sense a lease."

Are the controlling facts in the two cases parallel? Strictly speaking they are not, but, as the legal deductions therefrom produce the same result, they are practically identical. While it does not affirmatively appear by the record, the inference is that in the Wells Case no breach of the lease occurred at least in so far as the payment of rent is concerned, prior to the filing of the petition in bankruptcy.

■ In the instant case a receiver in equity was appointed some two to three months prior to the filing of the petition in bankruptcy, and the landlord prior to this latter date filed with the receiver a proof of claim for damages for the anticipatory breach of the contract of lease, so that when the petition in bankruptcy was filed, if the landlord had any claim at all against the bankrupt or his estate, it was a fixed liability absolutely owing and not in any sense contingent.

As said before I am bound to decide this case on the assumption that the common-law rule prevails in Ohio, and therefore, when the receiver was appointed by the state court and the claim was filed by the landlord with the receiver, no new rights were created in favor of the landlord as against the tenant or his estate. The filing of the claim was a mere gesture, for no such right existed on the part of the landlord. Fidelity Safe-Deposit & Trust Co. v. Armstrong (C. C.) 35 F. 567, 569. The effect of the appointment of the receiver created no new rights in favor of the landlord, and his remedies remained the same. He could sue or file a claim for all rentals accrued and unpaid. In addition, he possessed the option to repudiate the lease and to take back his property or continue the lease and enforce the payment of the rent as and when it should become due.

Counsel for the Hi-Lynn Company raise two equitable questions in their brief, which I deem worthy of answering. First, they claim that a denial of their claim works a hardship on the landlord. That is true in a sense, but the landlord could have protected himself. As Judge Sage said in his opinion in the Fidelity Safe-Deposit & Trust Co. v. Armstrong Case, supra: "These were contingencies which it was the duty of the lessor to take into account when he made his contract, and, if not satisfied to rely upon the bank itself, the only other course would have been to insist upon security for the performance of conditions of the lease."

A provision for liquidated damages in a lease has been sustained by the Supreme Court, as we have heretofore pointed out in the Filene Case, and a similar condition could have been written in the lease in question, and as Judge Sage says in his concluding sentence: "Having failed to provide against the contingency that has arisen, he is not entitled to the relief which he seeks by this bill of complaint."

The other question is the claimed unfairness in proceeding in bankruptcy against the McAllister-Mohler Company for the purpose of reaping the advantages offered by the federal decisions. I see nothing in this procedure other than the pursual of a legal right existing and known to the profession in general.

I therefore find that the Hi-Lynn Company cannot have allowed its claim for damages for the anticipatory breach of the lease, and it is limited to proving and having allowed all installments of rent due and unpaid and all taxes due and unpaid and insurance due and unpaid upon the date of the filing of the petition in bankruptcy, less the credit to be offset by reason of the payment, by the trustee in bankruptcy, for use and occupation of the premises.

Arnold, Wright, Purpus & Harlor, of Columbus, Ohio, for petitioner.

Hedges, Hoover & Tingley, and Watson, Davis & Joseph, of Columbus, Ohio, for trustee.

HOUGH, District Judge.

Petition in review dismissed, and findings and conclusions of referee approved and confirmed, upon authority of Wells v. Realty Co. (C. C. A.) 12 F.(2d) 237 and Kothe, Trustee, v. R. C. Taylor Trust, 280 U. S. 224, 50 S. Ct. 142, 74 L. Ed. 382.